UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM DZIEKANOWSKI | : | NO.: 3:01CV2394 (WIG) |
| MAUREEN TRAVERS | : | |
| | : | |
| v. | : | |
| | : | |
| THE ARROW LINE, INC. | : | |
| LEONARDO PEREZ | : | MAY 7, 2004 |

## MOTION FOR DETERMINATION OF WITNESS FEES

By way of background the defendants represent that the instant matter involves

a claim for personal injuries asserted by the plaintiffs herein.  In preparation for the

upcoming trial which is scheduled to commence on June 28, 2004 the defendants,

through the aid of plaintiffs' counsel's office, have attempted to notice the depositions

of three of the plaintiffs' treating physicians, Annarose Polifrone, Brian Haftel and Eial

Faierman.  Further, said treating physicians have expressed that they require prepaid

compensation in connection with their depositions at the rates of $5,000, $3,000 and

$3,000, respectively, for one half-day.

Compensation of expert witnesses is governed by the Federal Rules of Civil

Procedure.  Moreover, Fed.R.Civ.P. 26(b)(4)(B) states that "unless manifest injustice

would result, (i) the court shall require that the party seeking the discovery pay the

expert a **reasonable** fee for time spent in responding to discovery under this

subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of

this rule the court shall require the party seeking discovery to pay the other party a fair

portion of the fees and expenses reasonably incurred by the latter party in obtaining

facts and opinions from the expert.

Compensation of fact witnesses is governed by 28 U.S.C. § 1821 which

provides:

> "A witness shall be paid an attendance fee of $40 per day for each day's
> attendance.  A witness shall also be paid the attendance fee for the time
> necessarily occupied in going to and returning from the place of attendance at
> the beginning and end of such attendance or at any time during such
> attendance".  28 U.S.C. § 1821(b).

Accordingly, the determining factor for whether the aforementioned physicians

may charge a "reasonable fee" or whether they are bound by the statutory fee is

whether said treating physicians are "experts" or fact witnesses.

Experts are retained for purposes of trial and their opinions are based on

knowledge acquired or developed in anticipation of litigation for trial.  Mangala, M.D. v.

University of Rochester, 168 F.R.D. 137, 139 (WDNY. 1996).  On the other hand,

> "[treating physicians] are witnesses testifying to the facts of their examination,
> diagnosis and treatment of a patient.  It does not mean that the treating
> physicians do not have an opinion as to the cause of an injury based upon their
> examination of the patient or the degree of injury in the future.  These opinions
> are a necessary part of the treatment of the patient".

DeRienzo v. Metropolitan Transit Authority, (S.D.N.Y. 2004) (attached as **Exhibit A**).

Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D.Colo. 1995). (Treating physicians are not entitled to a fee other than a statutory fee of $40 as a matter of law), cited as authority in Coleman v. Dydula, 190 F.R.D. 320 (W.D.N.Y. 1999) (denying defendant's motion for an order directing physicians to be compensated at the statutory rate on the grounds that plaintiff designated them as experts and expected them to offer expert opinion testimony within the scope of Rule 26(a) (2) (A)), followed by Mangala, M.D., 168 F.R.D. at 139 (to the extent that a doctor's testimony related to his own care and treatment of the plaintiff, he is an ordinary witness under Federal Rules, not an expert). Accord. Zanowic v. Ashcroft, 2002 WL 826878 (S.D.N.Y. Apr. 30, 2002) (treating physician not entitled to fees other than those prescribed by § 1821)... Id.

In Zanowic, supra (attached as **Exhibit B**) the court asserted that courts within that circuit had reached conflicting results on the issue of whether treating physicians are entitled to a fee beyond the statutory witness fee. However, the Zanowic court found that the treating physician therein was not entitled to compensation from the defendants beyond that set forth in 28 U.S.C. § 1841. In so ruling the court reasoned that

.... However, upon reflection, I believe that the authority to make such a change most appropriately lies with the legislative branch. Responding to a subpoena is an onerous task for most witnesses; for the judiciary to start deciding who is entitled to special treatment and singling out one profession over another for special treatment would indeed be entering upon a "slippery slope." Demar v. United States, supra, 199 F.R.D. at 620. I also note that in the analogous area of subpoenas duces tecum Congress has determined when witnesses are entitled to special compensation for the fees inherent in assembling and copying responsive materials. See, e.g., 12 U.S.C. § 3415. The fact that Congress itself views the subject as being appropriately regulated by the legislative branch is a further consideration that weighs against creating judicial exceptions to the statutory limits on witnesses fees.

Based on the foregoing the defendants respectfully request that this court find that the treating physicians herein are subject to the statutory witness fee articulated in 28 U.S.C. § 1841.

Alternatively, in the circumstances that the Court does not find that the subject treating physicians are subject to 28 U.S.C. § 1841 the defendants assert that the fee required by Annarose Polifrone, M.D., is unreasonable and should be reduced.  Dr. Polifrone purports to require $5,000 for a one-half day deposition session.

In Delgado v. Sweeney, (E.D.Pa. 2004) (attached as **Exhibit C**) the court stated that courts consider seven criteria in determining whether a fee request is reasonable:

> (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interest implicated by Rule 26.

In support of their contention that Dr. Polifrone's fee is unreasonable the defendants assert the following:

1.    Dr. Polifrone is a physiatrist;

2.    Dr. Polifrone treated the plaintiff, Maureen Travers, in connection with routine soft tissue neck and back injuries;

4

3.    Dr. Polifrone's fee is significantly higher than all of the other physicians' deposition fees in this case none of which exceeds $3,000 for one-half day.

WHEREFORE, based on the foregoing the defendants request that this court find that the plaintiffs' treating doctors herein are fact witnesses subject to U.S.C. § 1821. Alternatively, the defendants request that the court issue an order which delineates a reasonable fee for Annarose Polifrone, M.D.'s deposition.

DEFENDANTS,
THE ARROW LINE, INC. and
LEONARDO PEREZ

By_____
        Paul Erickson
        Howd & Ludorf
        65 Wethersfield Avenue
        Hartford, CT  06114
        (860) 249-1361
        ct21398

5

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 7th day of May, 2004.

Adele R. Jacobs, Esquire
1375 Kings Highway East, Ste. 425
Fairfield, CT  06824

_____
Paul Erickson

Exhibit A

## LOIS Federal District Court Opinions

DeRIENZO v. METROPOLITAN TRANSIT AUTHORITY, (S.D.N.Y. 2004)

George DeRienzo, Plaintiff, -against- Metropolitan Transit Authority

and Metro-North Rail Road, Defendants

01 Civ. 8138 (CBM)

United States District Court, S.D. New York

January 14, 2004

Ira M. Maurer, Cahill & Goetsch, P.C., Croton-on-Hudson, NY, for Plaintiff

Brian C. Dunning, Ira J. Lipton, Hoguet Newman & Regal, LLP, New York, NY, for Defendant

### MEMORANDUM OPINION AND ORDER

CONSTANCE MOTLEY, Senior District Judge

Plaintiff DeRienzo moves the court to require defendants Metropolitan Transit Authority and Metro-North Railroad to compensate plaintiffs treating physicians for pre-trial depositions as expert witnesses pursuant to Fed.R.Civ.P. 26(b)(4)(C). For the reasons set forth below, plaintiff's motion is **DENIED**.

### BACKGROUND

This lawsuit was filed in 2001 under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. Plaintiff is a former officer for the Metropolitan Transit Authority ("MTA") who claims he sustained injuries when, during the course of his duties, he slipped and fell down a flight of stairs owned by the MTA's Metro-North Commuter Railroad. He underwent corrective

**Page 2**

back surgery, suffered a pituitary apoplexy and memory loss, and ultimately retired from the Force due to disability. The relationship of the fall to plaintiff's injuries is the focal point of the litigation.

During the course of discovery, plaintiff identified six physicians who treated him for his injuries: Dr. Forman, Dr. Cristofaro, Dr. Delbello, Dr. Roth, Dr. Blum, and Dr. Guy. Plaintiff has not identified any of these physicians as "experts" pursuant to the Federal Rules requiring disclosure of experts and an accompanying expert report. See Fed.R.Civ.P. 26(a)(2). Plaintiff has, however, identified Dr. Pikus as his expert medical witness and made the disclosures required under the Federal Rules to permit him to testify as such. According to defendants' review of the expert disclosures and Dr. Pikus' deposition testimony, Dr. Pikus will offer his opinion at trial that plaintiffs back surgery caused the pituitary apoplexy.

The issue before the court is whether plaintiffs six treating physicians constitute "experts" who are entitled to a fee beyond the $40

per day required by 28 U.S.C. § 1981(b) for the time spent being deposed by defendants.

**ANALYSIS**

Compensation of fact witnesses is governed by 28 U.S.C. § 1821 which provides:

> "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."

28 U.S.C. § 1821(b). Compensation of expert witnesses is governed by the Federal Rules of Civil Procedure. Under the Rules, a party may depose any person who has been identified as an expert witness whose opinions may be presented at trial. See Fed.R.Civ.P. 26(b)(4)(A)(B). For expert witnesses, however, "[u]nless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert." Fed.R.Civ.P. 26(b)(4)(C).

As such, the determining factor for whether plaintiffs six physicians can charge a "reasonable fee", most commonly, their hourly billing rate, or are bound by the statutory fee is whether the physicians are "experts" or fact witnesses.

"Experts are retained for purposes of trial and their opinions are based on knowledge acquired or developed in anticipation of litigation for trial." Mangala, M.D. v. University of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y. 1996). By contrast,
Page 3

> "[treating physicians] are witnesses testifying to the facts of their examination, diagnosis and treatment of a patient. It does not mean that the treating physicians do not have an opinion as to the cause of an injury based upon their examination of the patient or the degree of injury in the future. These opinions are a necessary part of the treatment of the patient. Such opinions do not make the treating physicians experts as defined by Rule 26(b)(4)(C)."

Baker> v. <Taco Bell Corp., 163 F.R.D. 348, 349 (D.Colo. 1995) (treating physicians are not entitled to a fee other than the statutory fee of $40 as a matter of law), cited as authority in Coleman v. Dydula, 190 F.R.D. 320 (W.D.N.Y. 1999) (denying defendant's motion for an order directing physicians to be compensated at the statutory rate on the grounds that plaintiff designated them as experts and expected them to offer expert opinion testimony within the scope of Rule 26(a)(2)(A)), followed by Mangala. M.D.. 168 F.R.D. at 139 (to the extent that a doctor's testimony related to his own care and treatment of plaintiff, he is an ordinary witness under the Federal Rules, not an expert). Accord. Zanowic v. Ashcroft, 2002 WL 826878 (S.D.N.Y. Apr. 30, 2002) (treating

physician not entitled to fees other than those prescribed by §
1821). Likewise, a doctor is not precluded from testifying to facts
learned and opinions formed in the course of treatment by virtue of the
fact that a party did not make the expert disclosures required under
Rule 26(a)(2) because the doctor is not an "expert" subject to the Rule. See
Zanowic v. Ashcroft, 2002 WL 826878, * 1 (S.D.N.Y. Apr. 30, 2002); Giladi
v. Strauch, 2001 WL 388052, *6 (S.D.N.Y. Apr. 16, 2001); Palmieri v.
Celebrity Cruise Lines, Inc., 2000 WL 310341 (S.D.N.Y. Mar. 27, 2000);
Salas v. United States, 165 F.R.D. 31 (W.D.N.Y. 1995).

   The information before the court regarding the six physicians in
question suggests that they will testify to the facts learned and
opinions formed in providing plaintiff medical care. To the extent that
they will speak to their own personal consultations with plaintiff, they
are not "experts" under the auspices of Rule 26 and are therefore limited
to the compensation scheme set forth in 18 U.S.C. § 1821.

**CONCLUSION**

   Plaintiff's motion to require defendants to compensate plaintiffs six
treating physicians for "reasonable fees" relating to their depositions
is **DENIED**.

   **SO ORDERED.**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

Exhibit B

## LOIS Federal District Court Opinions

ZANOWIC> v. ASHCROFT, (S.D.N.Y. 2002)

STEPHEN M. <ZANOWIC, JR., Plaintiff v. JOHN ASHCROFT, Attorney General

of the United States, et, al., Defendants

No. 97 Civ. 5292 (JGK) (HBP)

United States District Court, S.D. New York

April 17, 2002

MEMORANDUM OPINION AND ORDER

HENRY PITMAN, U.S. Magistrate District Judge

### I. Introduction

The issue currently before me is whether a treating physician is entitled to a witness fee beyond the $40 plus mileage permitted by 18 U.S.C. § 1821. For the reasons set forth below, I conclude that a treating physician is not entitled to such a fee.

### II. Facts

This is an employment discrimination action. Plaintiff alleges that he has been employed as a Deputy United States Marshal in the Southern District of New York since June 1988 (Complaint ¶ 6). Plaintiff claims that during his tenure, he "has witnessed and openly voiced his Opposition to the hostile work environment to which his African-American (Black) colleagues were subjected because of their race" (Complaint ¶ 8).

As a consequence of his criticism of the unfair treatment of African American Deputy Marshals, plaintiff claims that he was "subjected to harassment and disparate treatment, [that he] was, inter alia, denied service training that he had requested; referred to as a `white rat' by his colleagues; and subjected to other forms of harassment" (Complaint ¶ 12). Among other things, plaintiff alleges that he was subjected to physical and verbal abuse, that his locker was vandalized, that he was given undesirable assignments, that his performance reviews were unfairly downgraded and that his supervisors repeatedly failed to investigate his charges of retaliatory and disparate treatment or to take any corrective action.

As a result of these and other retaliatory acts, plaintiff alleges that he suffered "extreme emotional distress, requiring him to seek treatment and to request a leave of absence from the [Marshals Service]" (Complaint ¶ 48).

Among the witnesses plaintiff intends to call at trial is Dr. James Ferretti, who is claimed to be plaintiff's treating psychiatrist. On March 7, 2002, I concluded that, based on the record before me at that time, Dr. Ferretti was a treating physician and, as such, is entitled to testify to facts learned and opinions formed in the course of his

Case 3:01-cv-02394-WIG    Document 55    Filed 05/10/2004    Page 13 of 19

treatment of plaintiff, notwithstanding the fact that plaintiff had not
timely made the disclosure required by Rule 26(a)(2) with respect to Dr.
Ferretti.[fn1]

On March 28, 2002, I conducted a status conference in this matter. In
an effort to try to avoid future motion practice, I advised counsel at
that time that I found the opinion in Colemen v. Dydula, 190 F.R.D. 320
(W.D.N.Y. 1999) to be persuasive and that I tentatively believed that
Dr. Ferretti was entitled to a fee beyond the statutory per diem fee,
notwithstanding the fact that he was not an expert specially retained for
trial. However, because I wanted to give counsel an opportunity to
address the issue, I expressly noted that my ruling was without prejudice
to a renewed application by either side and invited counsel to submit
letter briefs addressing the issue. Counsel have now submitted letter
briefs and I re-visit the issue de novo.

III. Analysis

Courts within this Circuit have reached conflicting results on the
issue of whether treating physicians are entitled to a fee beyond the
statutory witness fee. Compare Coleman v. Dydula, supra, 190 F.R.D. 320
(concluding that treating physicians are entitled to a reasonable fee
beyond the statutory per diem for their testimony) with Matias v. United
States, 97 Civ. 8957 (NRB), 1999 WL 1022132 (S.D.N.Y. Nov. 5, 1999)
(reaching the opposite conclusion). Decisions from other Circuits reflect
the same lack of a consensus. See Demar v. United States, 199 F.R.D.
617, 618 (N.D. Ill. 2001) ("[T]he district courts that have addressed
this issue are, essentially, split.").

Physicians are probably called to testify in court more than any other
private sector employees. Almost every accident victim seen in an
emergency room is a potential plaintiff. And even where a patient is not
seen on an emergency basis, whenever the patient's condition is due, or
arguably due, to the conduct of a third-party, the treating physician is
a potential witness. In this respect, physicians are uniquely situated.

In view of the frequency with which physicians are called to testify,
compelling arguments can be made that they should be permitted to require
a fee beyond the $40 per day fee, plus mileage, authorized by
28 U.S.C. § 1841. However, upon reflection, I believe that the
authority to make such a change most appropriately lies with the
legislative branch. Responding to a subpoena is an onerous task for most
witnesses; for the judiciary to start deciding who is entitled to special
treatment and singling out one profession over another for special
treatment would indeed be entering upon a "slippery slope." Demar v.
United States, supra, 199 F.R.D. at 620. I also note that in the
analogous area of subpoenas duces tecum Congress has determined when
witnesses are entitled to special compensation for the fees inherent in
assembling and copying responsive materials. See, e.g.,
12 U.S.C. § 3415. The fact that Congress itself views the subject as
being appropriately regulated by the legislative branch is a further
consideration that weighs against creating judicial exceptions to the
statutory limits on witnesses fees.

IV. Conclusion

Accordingly, I conclude that Dr. Ferretti is not entitled to
compensation from defendants beyond that set forth in 28 U.S.C. § 1841.

[fn1] My ruling was without prejudice to a renewed application to

Case 3:01-cv-02394-WIG    Document 55    Filed 05/10/2004    Page 14 of 19

preclude Dr. Ferretti's testimony should subsequently disclosed evidence
establish that Dr. Ferretti is not a bona fide treating physician.

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved

Exhibit C

LOIS Federal District Court Opinions

---

DELGADO> v. <SWEENEY>, (E.D.Pa. 2004)

ORLANDO <DELGADO> v. EDWARD <SWEENEY>, et al

CIVIL ACTION NO. 01-3092

United States District Court, E.D. Pennsylvania

January 5, 2004

**MEMORANDUM**

M. FAITH ANGELL, Magistrate Judge

**FACTUAL AND PROCEDURAL BACKGROUND**

This matter was referred to me by the Honorable Louis H. Pollak for resolution of all non-dispositive pre-trial matters by Order dated October 8, 2002. Presently before me is Plaintiff's Motion for Relief from Expert Fees and Defendants Lehigh County Prison, Edward <Sweeney>, Cindy Egizio and Nancy Afflebach's Response to Plaintiff's motion.

Plaintiff Orlando <Delgado> has instituted this action against Defendants in which he claims that he was denied adequate medical care for heroin withdrawal symptoms and diabetes when he was in Lehigh County Prison.

**MOTION FOR RELIEF FROM EXPERT FEES**

Plaintiff wishes to depose Defendants[fn1] expert witness, Dr. Timothy Michals, and he has filed a motion for relief from the payment of Dr. Michals' expert fees. In the alternative, Plaintiff believe that Dr. Michals' fee is unreasonable1, and he asks the court to reduce his rate to a more reasonable fee. As a general rule, indigent litigants initially bear their own litigation expenses. *Tabron v.*
**Page 2**
*Grace,* 6 F.3d 147, 159 (3d Cir. 1993). The threshold question, here, then becomes whether the cost of deposing Defendants' expert witness should be shifted to Defendants.

The Federal Rules of Civil Procedure provide the mechanism for taking discovery from an expert witness. *Reed v. Binder*, 165 F.R.D. 424, 425 (D.N.J. 1996). Rule 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." "Unless manifest injustice would result . . . the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery . . ." Fed.R.Civ.P. 26(b)(4)(C). Unfortunately, there is no clear definition of "manifest injustice". *Reed*, 165 F.R.D. at 425. By the terms of Rule 26(b)(4)(C), exceptions to the normal course of payment of expert's fees for deposition testimony is permitted. *Id.* at 428.

Plaintiff herein relies on *Reed* as justification to shift the cost of deposing Dr. Michals to Defendants. The court must "weigh the possible hardships imposed on the respective parties . . . [and] balance the need for doing justice on the merits between the parties . . . against the

need for maintaining orderly and efficient procedural arrangement." *Id.* at 427-428, *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir. 1995). *Reed* held that manifest injustice would result if the impoverished plaintiffs had to pay six defense experts for their testimony. *Reed*, 165 F.R.D. at 428. The court found that the "imposing economic obstacle facing these plaintiffs seeking redress for the death of their wife and mother (and chief financial support) requires that these costs be shifted to the defendants." *Id.*

*Reed*, however, is distinguishable. There, the plaintiffs alleged that they were forced to undertake the depositions because of the inadequacies of the defense experts' reports. *Id.* at 429. After close examination the court found that the plaintiffs were substantially correct. *Id.* The court

**Page 3**

found that all of the six defense expert reports, to some extent, failed to meet the disclosure requirements of Rule 26(a)(2)(B). *Id.* at 430. Because the defendants failed to meet the disclosure requirements of Rule 26(a)(2)(B), the court found that the appropriate sanction was to require the defendants to bear the fees charged by their experts. *Id.* at 431. (emphasis added).

In *Tabron*, plaintiff, a State prisoner, brought suit under 42 U.S.C. § 1983 against eight prison officials, claiming that they had violated his constitutional rights by failing to protect him from an assault by another prisoner. *Tabron*, 6 F.3d at 150. The court denied indigent plaintiff's request to commit federal funds to pay for deposition transcripts. *Id.* at 159. In the alternative, plaintiff argued it was within the equitable powers of the district court to order the defendants to pay for deposition transcripts for plaintiff as a condition for taking the depositions. *Id.* The court agreed that a district court might, under some circumstances, exercise its discretion to order an opposing party to pay for copies of deposition transcripts for an indigent litigant as a condition precedent to allowing that party to take depositions. *Id.* "However, the magistrate judge declined to do so here after finding that copies of the transcripts were not necessary for Tabron to make his case, at least at the summary judgment stage." *Id.* The magistrate judge had noted that plaintiff had not demonstrated in any of his papers why he needed copies of the transcripts to defend against the motion for summary judgment. *Id.* "Given that, as a general rule, indigent litigants bear their own litigation expenses, at least initially, we cannot say that the district court's decision not to order defendants to provide [plaintiff] with copies . . . was an abuse of discretion." *Id.* at 159-160.

After weighing the possible hardships imposed on the respective parties and balancing the need for doing justice on the merits, the cost of deposing Dr. Michals should not be shifted to the defendants. Although it is within the discretion of the district court to shift the cost, Plaintiff has

**Page 4**

failed to meet his burden of showing that "manifest injustice" would otherwise result. Fed.R.Civ.P. 26(b)(4). Here, the record indicates that Plaintiff was able to retain and depose his own expert witness. Thus, he is able to make out a *prima facie* case. In addition, Plaintiff's reliance on *Reed* falls short. Plaintiff has neither alleged nor shown "a scarcity of information" in Dr. Michals' report. Contrary to *Reed*, Plaintiff here is not forced to undertake the deposition because of inadequacies of the defense expert report. Here, there is no evidence that Dr. Michals' report is inadequate in any way. Plaintiff desires to take Dr. Michals'

testimony in order to determine his qualifications to opine on Plaintiff's medical condition. This, seemingly, would be very easily challenged at trial. In any event, it falls short of the sort of "ambush at trial" *that Reed* sought to prevent.

Manifest injustice is a "stringent standard". *Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 330 (D.DE 2003). Plaintiff has not demonstrated that shifting the cost of discovery to Defendants would prevent manifest injustice.

## REASONABLENESS OF FEES

In the alternative, Plaintiff argues that Dr. Michals' fees are unreasonable and should be reduced. In determining whether a fee request pursuant to Rule 26(b)(4)(C) is reasonable:

> [C]ourts consider seven criteria: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interest implicated by <u>Rule 26. Fisher-Price</u>, 217 F.R.D. at 333.

Ultimately, it is in the court's discretion to set an amount that it deems is reasonable. *Id.* "Implicit in the above factors is that a `rich' party should not be allowed to agree to pay excessively
**Page 5**
high fees to its expert in order to prevent a `poorer' opposing party from being able to afford to depose the expert." *EEOC v. Johnson & Higgins, Inc.*, 1999 WL 32909, 4 (S.D.N.Y. 1999). When parties offer no useful information about the factors, the court may focus on the rate the expert usually charges and the rate the expert charges the retaining party tempered by the court's sense of what is reasonable. *Id.* Courts most often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party. *Id.*

The issue is whether Dr. Michals' rate of $2,550.00 for the first two hours of deposition testimony and $500.00 each additional hour is reasonable. It may very well be that Dr. Michals' fees are unreasonable. However, Plaintiff offers no evidence in support of its contention other than the rate charged by Plaintiff's expert. Even when making that argument, Plaintiff does not show that Plaintiff's expert's credentials are comparable to those of Dr. Michals (to imply that Dr. Michals' fees are unreasonable). There is also no evidence to suggest Defendants retained Dr. Michals' services knowing that Plaintiff would not be able to afford to depose the witness. Defendants suggest that they retained Dr. Michals because of his excellent credentials and esteem in the community. Absent a showing by the plaintiff via any of the seven enumerated criteria that Dr. Michals' fees are unreasonable, the court concludes that the rate charged is reasonable.

## CONCLUSION

Plaintiff has failed to meet the stringent standard of showing that shifting the cost of deposing Defendants' expert witness to the defendants would prevent manifest injustice. Additionally, Plaintiff has failed to provide any evidence for this court to conclude, under the seven-criteria analysis posed by *Fisher-Price* that Dr. Michals' fees are unreasonable. Absent a showing on either issue, Plaintiff's motion is denied.

### ORDER

AND NOW, this 5th day of January, 2004, upon consideration of Plaintiff Orlando <Delgado>'s Motion for Relief from Expert Fees and Defendants, Lehigh County Prison, Edward <Sweeney, Cindy Egizio, and Nancy Afflebach's Response to Plaintiff's Motion for Relief from Expert Fees, it is hereby **ORDERED** by the Court that Plaintiff's Motion for Relief from Expert Fees (Docket Entry No. 36) is DENIED.

[fn1] Dr. Michals charges $2,550.00 for two hours of deposition testimony and $500.00 for every additional hour.
**Page 1**

Copyright © 2004 Loislaw.com, Inc. All Rights Reserved